**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

ROBERT MILLER,

                           Plaintiff,

    v.

OTT, et al.,

                           Defendants.

No. 9:20-CV-00666 (DNH/CFH)

---

**APPEARANCES:**

Robert Miller
18-A-3955
Mid-State Correctional Facility
P.O. Box 2500
Marcy, New York 2500
Plaintiff pro se

Attorney General for the
State of New York
The Capitol
Albany, New York 12224
Attorney for Defendants

**OF COUNSEL:**

DAVID C. WHITE, ESQ.
Assistant Attorney General

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

    Plaintiff pro se Robert Miller ("plaintiff"), who was, at all relevant times, in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") at Mohawk Correctional Facility ("Mohawk C.F."), Downstate Correctional Facility ("Downstate C.F."), Five Points Correctional Facility ("Five Points C.F."), and

---

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Franklin Correctional Facility ("Franklin C.F.") brings this action pursuant to 42 U.S.C. § 1983, alleging that defendant Mohawk C.F. Correction Officer Ott ("C.O. Ott) violated his constitutional rights under the Eighth Amendment.  See Dkt. No. 1 ("Compl.").[2]  Presently pending before the Court is defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56.  See Dkt. No. 12.  Plaintiff did not oppose the motion.  For the reasons stated herein, it is recommended that defendant's motion be granted, and plaintiff's Complaint be dismissed.

## I. Background

Plaintiff's complaint is written on a form complaint for civil rights violations pursuant to 42 U.S.C. § 1983, and asserts an Eighth Amendment excessive force claim against C.O. Ott.  See Compl. at 1, 4, 5.  In particular, plaintiff alleges that, on August 2, 2019, while incarcerated at Mohawk C.F., C.O. Ott screamed at him, punched him in the face, and threatened to spray him with mace.  See id. at 1, 2, 4.  Plaintiff also alleges that C.O. Ott threatened to kill plaintiff and place his body in the bathroom.  See id. at 4.

Defendant moved for summary judgment on September 16, 2020.  See Dkt. No. 12.  That same day, the Court sent notice to plaintiff of his response deadline of November 2, 2020.  See Dkt. No. 14.  The response deadline terminated on November 2, 2020, and plaintiff did not submit a response in opposition to defendant's motion or

---

[2]  Upon its initial review of the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), the Court *sua sponte* dismissed plaintiff's remaining claims without prejudice for failure to state a claim.  See Dkt. No. 7 at 9.  Plaintiff did not file an amended pleading.

request an extension to do so, and has not corresponded in any other manner with the Court.

## II. Summary Judgment Standard

Summary judgment may be granted only if the submissions of the parties taken together "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists." Price v. Oropallo, No. 9:13-CV-0563 (GTS/TWD), 2014 WL 4146276, at *4 (N.D.N.Y. Aug. 19, 2014) (citing Salahuddin v. Goord, 467 F.3d 263, 272-73 (2d Cir. 2006)). Facts are material if they may affect the outcome of the case as determined by substantive law. See Anderson, 477 U.S. at 248. A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. (internal quotation marks omitted). "In determining whether summary judgment is appropriate, [the Court will] resolve all ambiguities and draw all reasonable inferences against the moving party." Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. See Salahuddin, 467 F.3d at 273. The nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "Conclusory allegations,

3

conjecture, and speculation . . . are insufficient to create a genuine issue of fact." Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Treistman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a *pro se* litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest. At the same time, our cases have also indicated that we cannot read into *pro se* submissions claims that are not consistent with the *pro se* litigant's allegations, or arguments that the submissions themselves do not suggest, that we should not excuse frivolous or vexatious filings by *pro se* litigants, and that *pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law . . . .

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds *pro se*, . . . a court is obligated to construe his pleadings liberally." (internal quotation marks and citations omitted)).

Rule 56 also provides that if a nonmoving party fails to oppose a summary judgment motion, the court may "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]" Fed. R. Civ. P. 56(e)(3). However, "the failure to oppose a motion for summary judgment alone does not justify the granting of summary judgment. Instead, the district court must still assess whether the moving party has fulfilled its burden of demonstrating that there is no genuine issue of material fact and its entitlement to judgment as a

matter of law." Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).  If the evidence submitted in support of the motion for summary judgment does not meet the movant's burden of production, "'summary judgment must be denied *even if no opposing evidentiary matter is presented*.'" Amaker v. Foley, 274 F.3d 677, 681 (2d Cir. 2001) (quoting Fed. R. Civ. P. 56(e) Advisory Committee Notes to 1963 amendment) (additional citation omitted).  "Moreover, in determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement.  It must be satisfied that the citation to evidence in the record supports the assertion." Vermont Teddy Bear Co., 373 F.3d at 244.  Thus, although plaintiff did not oppose defendants' motion for summary judgment, "the Court will not simply grant defendants' motion automatically, but will accept the truth of defendants' factual allegations, and determine whether defendants are entitled to summary judgment." Allaway v. McGinnis, 473 F. Supp. 2d 378, 381 (W.D.N.Y. 2007).

### III. Discussion[3]

Defendant moves for summary judgment on the basis that plaintiff failed to exhaust his available administrative remedies with respect to his Eighth Amendment excessive force claim against C.O. Ott.  See Dkt. No. 12-3 at 8-9.  In particular, defendant avers that plaintiff did not file a grievance relating to this claim.  See id. at 8.  As stated above, plaintiff does not oppose defendant's motion.

---

[3] All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

### A. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust any administrative remedies available to him or her before bringing an action for claims arising out of his or her incarceration. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). The exhaustion requirement applies "'to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" Cucchiara v. Dumont, No. 9:18-CV-0182 (GLS/CFH), 2019 WL 2516605, at *4 (N.D.N.Y. Apr. 26, 2019) (quoting Porter v. Nussle, 534 U.S. 516, 532 (2002)). Further, the exhaustion requirement applies even where the prisoner seeks relief not available in the administrative grievance process, such as money damages. See Porter, 534 U.S. at 524. "To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or she is incarcerated." Cuadrado v. Brueault, No. 9:14-CV-1293 (DNH/CFH), 2015 WL 1606178, at *3 (N.D.N.Y. Apr. 8, 2015); see Jones v. Bock, 549 U.S. 199, 218 (2007).

While the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." Ruggiero v. County of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (internal quotation marks and citation omitted). Until recently, courts in this District followed a three-part test established by the Second Circuit in Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004). Under the test established in

Hemphill, a plaintiff's failure to exhaust could be excused if a plaintiff established that his or her failure to exhaust was justified by "special circumstances." Id. However, in Ross v. Blake, the Supreme Court held that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement." Ross v. Blake, ____ U.S. ____ 136 S. Ct. 1850, 1862 (2016). Thus, the special circumstances exception previously promulgated by the Second Circuit in Hemphill is no longer consistent with the statutory requirements of the PLRA. See Williams v. Correction Officer Priatno, 829 F.3d 118, 123 (2d Cir. 2016).

However, courts must still consider the PLRA's "textual exception to mandatory exhaustion." Ross, ____ U.S. ____, 136 S. Ct. at 1858. Under this exception, courts must determine whether administrative remedies were "available" to a prisoner. Id. The Supreme Court identified three circumstances where administrative remedies may be unavailable to a prisoner. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 1859 (citing Booth v. Churner, 532 U.S. 731, 736, 738 (2001)). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Lastly, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

DOCCS has a well-established three-step administrative procedure for inmate grievances known as the Inmate Grievance Program ("IGP"). See N.Y. Comp. Codes R. & Regs. (7 N.Y.C.R.R.) § 701.5. First, an inmate must file a grievance with Inmate

7

Grievance Resolution Committee ("IGRC") within 21 calendar days of the alleged incident.  See id. at § 701.5(a)(1).  The grievance "may only be filed at the facility where the inmate is housed even if it pertains to another facility."  Id.  An adverse decision from IGRC is to be appealed to the superintendent of the facility, and an adverse decision of the superintendent must be appealed to CORC.  See 7 N.Y.C.R.R. § 701.5(c), (d).  "Grievances claiming employee harassment, including claims of excessive force, "are of particular concern to the administration of [DOCCS] facilities," and subject to an expedited procedure whereby the grievance goes directly to the facility superintendent.  Hamlet v. Stotler, No. 9:17-CV-0939 (GLS/TWD), 2018 WL 2729263, at *5 (N.D.N.Y. Apr. 27, 2018) (quoting 7 N.Y.C.R.R. § 701.8), report and recommendation adopted sub nom. Hamlett v. Stotler, No. 9:17-CV-939 (GLS/TWD), 2018 WL 2727875 (N.D.N.Y. June 6, 2018).  The superintendent is required to initiate an in-house investigation by higher ranking supervisory personnel; request an investigation by the inspector general's office; or request an investigation by the New York State Police Bureau of Investigation if the superintendent determines that criminal activity may be involved.  See 7 N.Y.C.R.R. § 701.8(d).  "Within 25 calendar days of receipt of the grievance, the superintendent will render a decision on the grievance and transmit said decision, with reasons stated to the grievant."  Id. at § 701.8(f).  The inmate must then appeal an adverse decision to CORC within seven calendar days of receipt of the Supervisor's decision.  See id. at § 701.8(h).  CORC has a 30-day deadline to respond to the appeal.  See Hayes v. Dahlke, 976 F.3d 259, 270-71 (2d Cir. 2020) (citing 7 N.Y.C.R.R. § 701.5(d)(3)(ii)).  An inmate may request an exception to the

limit for filing a grievance or appeal in writing and within 45 days after an alleged incident.  See 7 N.Y.C.R.R. § 701.6(g)(1)(i)(a), (b).

Regardless of whether the grievance is related to an assault, an appeal is not exhausted until the inmate receives a final decision from CORC.  See Hamlet, 2018 WL 2729263, at *5.  "The defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action."  McMillian v. Walters, No. 9:16-CV-0277 (MAD/DJS), 2017 WL 8894737, at *2 (N.D.N.Y. Dec. 18, 2017), report and recommendation adopted, No. 9:16-CV-277 (MAD/DJS), 2018 WL 879270 (N.D.N.Y. Feb. 14, 2018).

### 1. Plaintiff Failed to Exhaust Available Administrative Remedies

As stated above, plaintiff did not oppose defendants' motion.  Therefore, the undersigned "must accept [d]efendants' statement, which is supported and uncontroverted on the record . . ., that [p]laintiff has failed to properly exhaust available administrative remedies as true under Local Rule [56.1] and [Fed. R. Civ. P.] 56(e)."  Oliver v. Outhouse, No. 9:06-CV-1412 (LEK/RFT), 2008 WL 508909, at *4-5 (N.D.N.Y. Feb. 21, 2008).  Because there is no factual dispute on that dispositive issue, summary judgment is appropriate.

In his statement of material facts, submitted pursuant to Local Rule 56.1, defendant explain that, plaintiff was incarcerated at Mohawk C.F. from February 4, 2019, through August 27, 2019, and was transferred from Mohawk C.F. to Franklin C.F. on August 27, 2019.  See Dkt. No. 12-1 at ¶ 10.  Plaintiff was temporarily housed during transit at Downstate C.F. between August 27, 2019, through August 29, 2019, and at

9

Five Points C.F. on August 29, 2019.  See id. at 3 ¶¶ 11, 12. Plaintiff arrived at Franklin C.F. on August 29, 2019, where he remained until February 27, 2020.  See id. at ¶ 13. Defendant submits the declarations of Joseph Cieslak ("Cieslak"), the inmate grievance program ("IGP") supervisor at Mohawk C.F.; Melissa Picket ("Picket"), IGP supervisor at Downstate C.F.; Mindi Schultz ("Schultz"), IGP supervisor at Five Points C.F; and Judy Tavernier ("Tavernier"), IGP supervisor at Franklin C.F. (collectively, where appropriate, "the IGP supervisors") in support of his explanation of plaintiff's transfer and housing between August 27, 2019, and February 27, 2020.  See Dkt. No. 12-10 at 2, 5 ¶¶ 9, 10, 18; Dkt. No. 12-8 at 4 ¶ 14; Dkt. No. 12-6 at 4 ¶ 14; Dkt. No. 12-13 at 5 ¶ 17.  Defendant also proffers a copy of plaintiff's chronological history of incarceration, which corroborates the foregoing timeline.  See Dkt. No. 12-7.

Further, citing the IGP supervisors' declarations, defendants state that, at all relevant times, Mohawk C.F., Downstate C.F., Five Points C.F., and Franklin C.F. had fully functioning inmate grievance procedures available to all incarcerated individuals in each facility's law library.  See Dkt. No. 12-1 at 3 ¶ 14; Dkt. No. 12-10 at 2 ¶ 4; Dkt. No. 12-8 at 2 ¶ 4; Dkt. No. 12-6 at 2 ¶ 4; Dkt. No. 12-13 at 2 ¶ 4.  Each of the IGP supervisors sets forth in their declaration a step-by-step explanation of the grievance procedure utilized at their respective facility, as set forth in 7 N.Y.C.R.R. § 701.1 *et seq.* and as incorporated in DOCCS Directive 4040.  See Dkt. No. 12-10 at 2-3 ¶ 7; Dkt. No. 12-8 at 2-3 ¶¶ 5-9; Dkt. No. 12-6 at 2-3 ¶¶ 5-9; Dkt. No. 12-13 at 2-4 ¶¶ 7-10.  In addition, Cieslak and Tavernier note in their declarations in support of summary judgment that every individual who arrives at their respective facilities is required to complete an orientation program, which includes a presentation concerning the

10

grievance policies and procedures, including how to file a grievance.  See Dkt. No. 12-10 at 2 ¶ 5; Dkt. No. 12-13 at 2 ¶ 5.  Defendant proffers a copy plaintiff's Inmate Program Assessment, which indicates that plaintiff successfully completed facility orientations at Mohawk C.F. and Franklin C.F.  See Dkt. No. 12-11.

Defendant states, based on the assessment of the IGP supervisors, that plaintiff's claim for excessive force against C.O. Ott is the proper subject for a grievance under the DOCCS grievance procedure as set forth in 7 N.Y.C.R.R. § 701.1 *et seq.* See Dkt. No. 12-1 at 2 ¶ 8; Dkt. No. 12-10 at 5 ¶ 17; Dkt. No. 12-8 at 4 ¶ 13; Dkt. No. 12-6 at 4 ¶ 13; Dkt. No. 12-13 at 5 ¶ 16.  Further, defendant points out that, pursuant to 7 N.Y.C.R.R. § 701.6(g)(1)(i)(a), an inmate may request an extension of the 21-day time limit for filing a grievance under 7 NYCRR § 701.5(a)(1) based on a showing of mitigating factors, and that such a request must be made in writing and within 45 days of the alleged incident.  See Dkt. No. 12-1 at 4 ¶ 4,5.  Therefore, the time for plaintiff to file a grievance relating to the alleged August 2, 2019 incident expired on August 23, 2019, and the time for plaintiff to file a written request for an extension of time to file a grievance relating to that alleged incident expired on September 16, 2019.  See Dkt. No. 12-10 at 5 ¶¶ 20, 23; Dkt. No. 12-8 at 5 ¶ 21; Dkt. No. 12-6 at 5 ¶ 21; Dkt. No. 12-13 at 5 ¶ 19.[4]

Moreover, each IGP supervisor declares that their respective facilities maintain records of all inmate grievances and requests for extensions of time to file late

---

[4] The undersigned notes that defendant appears to have made a scrivener's error in his Local Rule 56.1 statement of material facts insofar as he suggests that the expiration date for plaintiff to request an extension of the time to file his grievance concerning the alleged August 2, 2019 incident was October 22, 2019.  See Dkt. No. 12-1 at 4  25.  However, this error is of no moment, as defendant cites to Cieslak's declaration, which contains the correct date of September 16, 2019.  See id. (citing Dkt. No. 12-10).

11

grievances, and that if plaintiff had done either, there would be a record of such.  See Dkt. No. 12-10 at 4 ¶¶ 14, 15; Dkt. No. 12-8 at 3-4,  ¶¶ 10, 16; Dkt. No. 12-6 at 3-4 ¶¶ 10, 16; Dkt. No. 12-13 at 4, 5 ¶¶ 11, 13, 14.  However, all of the IGP supervisors explain in their declarations that, based upon a review of plaintiff's grievance records at their respective facilities, plaintiff did not file any grievances or submit any written request for an extension of time to file a late grievance concerning the alleged August 2, 2019 incident.  Dkt. No. 12-10 at 5 ¶¶ 19, 21, 22; Dkt. No. 12-8 at 4 ¶¶ 17, 18; Dkt. No. 12-6 at 4 ¶¶ 17, 19; Dkt. No. 12-13 at 5 ¶¶ 18, 20.  In addition, defendants proffer the declaration of Rachael Seguin ("Seguin"), the Assistant Director of the DOCCS IGP, who explains that "plaintiff has not appealed any grievances to CORC while he has been in DOCCS custody."  Dkt. No. 12-4 at 3 ¶¶ 8-9.  Defendant proffers plaintiff's CORC records, which establishes that, as Seguin declares, plaintiff (DIN number 18A3955) has not filed any CORC appeals.  See Dkt. No. 12-5 at 1-2.

     Based on the foregoing, the undersigned concludes that defendants' aforementioned admissible evidence establishes that no genuine issue of material fact exists concerning plaintiff's failure to exhaust administrative remedies, as he failed to file a grievance with respect to his sole claim pending before this Court.  See Crenshaw v. Syed, 686 F. Supp. 2d 234, 236 (W.D.N.Y. 2010) (accepting as true the defendants' assertions made in their uncontroverted statement of material facts that the facility had no records of the plaintiff filing any grievance or administrative appeal with respect to the claims raised in his federal lawsuit, and dismissing the plaintiff's complaint for failure to exhaust available administrative remedies).  Furthermore, no exception to the mandatory exhaustion requirement applies here.  As defendants' admissible evidence

establishes, each facility at which plaintiff was housed had a fully operative grievance procedure, of which plaintiff was familiar based on his successful completion of orientation programs at both Mohawk C.F. and Franklin C.F.  Dkt. No. 12-10 at 2 ¶¶ 4, 5; Dkt. No. 12-8 at 2 ¶ 4; Dkt. No. 12-6 at 2 ¶ 4; Dkt. No. 12-13 at 2 ¶¶ 4, 5.

Where a claim is dismissed for failure to exhaust administrative remedies, dismissal without prejudice is appropriate if the time permitted for pursuing administrative remedies has not expired.  See Berry v. Kerik, 366 F.3d 85, 87-88 (2d Cir. 2004).  However, if a prisoner has failed to exhaust available administrative remedies and the time in which to exhaust has expired, it is proper for the court to dismiss the complaint with prejudice because any attempt to exhaust would be futile.  See id. at 88; see also Richard v. LeClaire, No. 9:15-CV-00006 (BKS/TWD), 2019 WL 5197041, at *9 (N.D.N.Y. May 6, 2019) ("Because [the p]laintiff's failure to exhaust is at this point incurable, the Court recommends that summary judgment for failure to exhaust administrative remedies be with prejudice.").  Here, as defendants' admissible evidence establishes, the time in which plaintiff could have filed his grievance expired on August 23, 2019, and the time in which to request an extension to file a late grievance expired on September 16, 2019.  See Dkt. No. 12-10 at 5 ¶¶ 20, 23; Dkt. No. 12-8 at 5 ¶ 21; Dkt. No. 12-6 at 5 ¶ 21; Dkt. No. 12-13 at 5 ¶ 19.  Therefore, as plaintiff's failure to exhaust available administrative remedies relating to the incidents giving rise to his present claims is no longer curable, dismissal with prejudice is appropriate.  See Berry, 366 F.3d at 88; see also Demuth v. Hand, No. 9:18-CV-769 (LEK/TWD), 2019 WL 7756095, at *4 (N.D.N.Y. Dec. 30, 2019) (recommending granting the defendants' unopposed motion for summary judgment and dismissing, with prejudice, the pro se

13

inmate's claims based on his failure to exhaust available administrative remedies), report and recommendation adopted, No. 9:18-CV-769 (LEK/TWD), 2020 WL 419422 (N.D.N.Y. Jan. 27, 2020).

### IV. Conclusion

**WHEREFORE**, based on the findings set forth above, it is hereby:

**RECOMMENDED**, that defendants' Motion for Summary Judgment (Dkt. No. 12) be **GRANTED**; and it is further

**RECOMMENDED**, that plaintiff's Complaint (Dkt. No. 1) be **DISMISSED IN ITS ENTIRETY WITH PREJUDICE**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed R. Civ. P. 6(a), 6(e), 72.[5]

---

[5] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Id. § 6(a)(1)(C).

Dated: August 4, 2021
      Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge